Stanley WILLIAMS et al.

v.

WALLACE SILVERSMITHS, INC.

Civ. No. N–74–125.

United States District Court,
D. Connecticut.

Nov. 11, 1976.

Appeal dismissed March 4, 1977.

Mary Ellen Wynn, New Haven, Conn., for plaintiffs.

Warren W. Eginton, Stamford, Conn., for defendant.

## RULING ON MOTION FOR CLASS ACTION CERTIFICATION

NEWMAN, District Judge.

This action, brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C.A. § 1981, alleges that the defendant discriminated against the named plaintiffs and those similarly situated on the ground of race in employment, in that its policies of recruiting, hiring, training, assigning, transferring, promoting, compensating and terminating employees deny the plaintiffs equal employment opportunity and deny them the same rights enjoyed by White citizens. Plaintiffs have moved to certify a class consisting of all Black persons currently employed by defendant; all Black persons employed by the defendant since July 2, 1965, but not currently so employed; all Black persons who will be employed by the defendant in the future; all Black persons who applied for employment with the defendant on or after July 2, 1965, but were denied employment; and all Black persons deterred or prevented from applying for employment with the defendant because of the defendant's failure to recruit or hire Black persons. They suggest the following designation of subclasses:

Subclass 1—all black persons who were deterred from applying for employment with the defendant from July 2, 1965 to the present or who will be so deterred by the defendant in the future as a result of defendant's reputed discriminatory hiring practices.

Subclass 2—all black persons who applied and were qualified for employment with the defendant from July 2, 1965 to the present but were refused employment as a result of defendant's allegedly discriminatory hiring practices.

Subclass 3—all black persons employed by the defendant since July 2, 1965, whether or not currently so employed, who have been or will be denied promotions, had received, are receiving or who will in the future receive job assignments, job training or the lack thereof, compensation or the lack thereof, or have been denied or will be denied apprenticeships or were, are or will be discouraged from applying for apprenticeships or who have been, are now, or will be otherwise affected by the allegedly discriminatory employment practices of defendant.

Subclass 4—all black persons employed by the defendant since July 2, 1965 who were discharged or will be discharged as a result, directly or indirectly, of defendant's allegedly discriminatory employment practices.

The defendant objects to the motion for class certification on numerous grounds.

Rule 23 of the Federal Rules of Civil Procedure sets forth the standards to be used in determining whether a case should be tried as a class action. The pertinent portions of this rule are set out in the margin.[1] The requirements of Rule 23(a)

1. (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) *the class is so numerous that joinder of all members is impracticable,* (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class

have unhappily come to be known as numerosity, commonality, typicality, and adequacy of representation. Defendant challenges the appropriateness of class action certification for failure to satisfy each of these criteria. Consideration of numerosity of the class and of the Rule 23(b) requirements will be deferred until after consideration of the outer limits of the class these plaintiffs are competent to represent by virtue of their showing as to commonality, typicality, and adequacy of representation. While the named plaintiffs may meet these requirements with respect to certain subclasses, they do not appear to meet them with respect to others.

Five of the seven named plaintiffs are currently employed by the defendant. The sixth is a former employee who left voluntarily, and the seventh is the widow of a deceased employee. Defendant argues that because all the named plaintiffs (or plaintiff's decedent in the case of the widow plaintiff) are or have been employed by Wallace, it would be inappropriate to include in the class any persons who have never been employed by Wallace, and thus persons who have been or will be deterred from applying for employment, persons who were denied employment, and future employees are beyond the proper scope of the class. Further, since none of the named plaintiffs has ever been discharged, the class should not include persons who have been or will be discharged from Wallace. Defendant asserts that the named plaintiffs can represent, if at all, a class limited to current and voluntarily separated employees, since as to any other class members the requirements of Rule 23(a)(2), (3), and (4) are not met.[2]

The defendant's contentions are persuasive as to some of the subclasses. Except for the common factor of race, there is no area of overlap between the claims that the named plaintiffs can assert as individuals and the claims of persons who were denied employment or deterred from applying for employment. The latter subclasses would wish to challenge hiring policy and practice, but since every named plaintiff was hired by the defendant, no named plaintiff has a hiring grievance of his own. The plaintiff's own claims relate to their conditions of employment, including training, assignment, transfer, promotion, compensation, and termination. None of the members of the subclasses of persons denied employment or deterred from applying for employment shares these grievances with the named plaintiffs. The interests that plaintiffs assert they have in insuring a nondiscriminatory hiring policy—eradicating the badge of slavery that results from racist employment practices, ending their own isolation at the company, and eliminating the defendant's reputation as a discriminatory employer—are too general in nature to make them adequate representatives of a class of persons with whom they have no category of grievance in common.

Since the claims of the named plaintiffs do not have the requisite commonality or typicality with the claims of the subclasses of persons denied employment and deterred from seeking employment, and since the named plaintiffs are not proper representatives of these subclasses, the putative class cannot include persons denied employment and deterred from seeking employment. Numerous other courts have adopted this approach.[3]

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

2. Defendant's other claims need not be considered at this time.

3. See, e. g., E.E.O.C. v. Detroit Edison Co., 515 F.2d 301 (6th Cir. 1975); Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Jones v. Holy Cross Hospital Silver Spring, Inc., 64 F.R.D. 586 (D.Md.1974); Watson v. New Orleans, 12 F.E.P. Cases 1625 (E.D.La.1974); Freeman v.

■ As to the named plaintiffs' ability to represent discharged persons, two factors not present in the case of the persons denied employment or deterred from seeking employment are relevant. First, during the period when the discharged persons were actually employed, they would have been subject to the same allegedly discriminatory policies of training, assignment, apprenticeships, transfers, promotion, and compensation that have been affecting the named plaintiffs. Thus the named plaintiffs are competent to represent them with regard to these conditions of employment. The second factor is that if discriminatory discharge policies do in fact exist, the named plaintiffs could conceivably be in jeopardy of becoming victims of these policies. Plaintiffs have a sufficient stake in eliminating any such policies and sufficient identity of interest with any previous victims to make them appropriate representatives. Whatever proof problems there may be in determining whether the actual cause of any given discharge was a policy of race discrimination are not before the Court at this stage.

■ There appears to be no basis for including in the class the as yet unknown persons who may be employed by the defendant, or denied employment, or deterred from seeking employment in the future. Any declaratory or injunctive relief that may be entered will redound to the benefit of these persons in any event, but certainly no monetary relief can be awarded to them for discrimination not yet inflicted. Many recent cases have declined to include such future employees in a Title VII class.[4]

Motor Convoy, Inc., 68 F.R.D. 196 (N.D.Ga. 1974); Richmond Black Police Officers Assn. v. Richmond, 386 F.Supp. 151 (E.D.Va.1974).

4. See, e. g., Jones v. Holy Cross Hospital Silver Spring, Inc., supra; Freeman v. Motor Convoy, Inc., supra; Harvey v. Stein Printing Co., 19 F.R.Serv.2d 1072 (N.D.Ga.1973); Gerstle v. Continental Airlines, Inc., 50 F.R.D. 213 (D.Colo.1970). In the Harvey case the Court noted that if future Black employees were included in the class, "then an unfavorable disposition of the litigation would bind them and prevent redress of discrimination not yet in-

■ The exclusion of persons denied employment or deterred from seeking employment and persons who will be employed or denied or deterred in the future limits the putative class to the defendant's current and former Black employees. Once these limits are fixed, the serious numerosity problem becomes apparent. There are only five current Black employees, all of whom are named plaintiffs. While plaintiffs' counsel represents that several other Black persons have recently been hired and that approximately 10 Black persons who worked for a now defunct subsidiary may be eligible for inclusion, there is no indication that the increase is sufficient to meet the numerosity requirement. There are only 22 former Black employees.[5] Neither the five and 22 taken separately, nor the 27 taken together, nor the 27 with the possible addition of the subsidiary's employees, make up a class sufficiently numerous that joinder would be impracticable, even if allowance is made for moderate growth of the class due to recent hiring.

Since certification must be denied on numerosity grounds, there is no reason to consider whether the requirements of Rule 23(b)(2) or (3) have been met. There is likewise no need to consider the defendant's other arguments relating to the existence vel non of discrimination against the named plaintiffs.

The motion for class action certification is denied. Defendant's renewed motion to dismiss is likewise denied, since the matters raised by that motion have been disposed of by the class action motion.

flicted. If they are not includable, however, injunctive relief, if granted, would inure to their benefit." 19 F.R.Serv.2d at 1073.

5. The parties have not fully briefed the question of the cutoff dates for consideration of the Title VII and § 1981 claims of class members. The parties do not seem to dispute that 22 is the maximum number of former employees who can be considered under whatever statute of limitations may be applied, unless the 10 employees of the former subsidiary are added.