NEW YORK ASSOCIATION OF HOMES
FOR AGING et al.,
Plaintiffs-Appellants,

v.

Philip L. TOIA, as Commissioner of
Social Services of the State of New
York, et al., Defendants-Appellees.

Joseph BULLA et al.,
Plaintiffs-Appellants,

v.

Philip L. TOIA, as Commissioner of
Social Services of the State of New
York, et al., Defendants-Appellees.

Nos. 1136 and 1137, Dockets 77–7102
and 77–7114.

United States Court of Appeals,
Second Circuit.

Argued April 11, 1977.

Decided July 27, 1977.

David J. Stern, New York City (Proskauer, Rose, Goetz & Mendelsohn, Jeffrey A. Mishkin, and Stephen E. Tisman, New York City, on the brief), for plaintiffs-appellants in Docket No. 77–7102.

George C. Mantzoros, Asst. Atty. Gen., State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., State of New York, New York City, on the brief), for defendants-appellees in Docket No. 77–7102.

Andrew P. Zweben, Legal Services for the Elderly Poor, New York City (Stephen M. Jacoby, American Jewish Congress, New York City, on the brief), for plaintiffs-appellants in Docket No. 77–7114.

Charles A. Bradley, Asst. Atty. Gen., State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., State of New York, New York City, on the brief), for defendants-appellees in Docket No. 77–7114.

Before CLARK, Associate Justice,* and ANDERSON and MULLIGAN, Circuit Judges.

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Anderson and Mulligan who are in agreement on this opinion.

ROBERT P. ANDERSON, Circuit Judge:

In these two actions the respective plaintiffs contest the validity of the medicaid reimbursement formula established on September 30, 1976 for residential health care facilities under regulations promulgated by the Commissioner of Health of the State of New York, 10 New York Code of Rules and Regulations (N.Y.C.R.R.) Part 86–2, pursuant to Chapter 76 of the New York Session Laws of 1976, which added § 2807(2)(e) to the New York Public Health Law. The medicaid reimbursements of approximately 60% of the residential health care facilities in the State have been reduced as a result of these new regulations.[1] Both cases are claimed class actions in which each group of plaintiffs seeks a declaratory judgment that reimbursement under Part 86–2 is in violation of various state and federal statutory provisions and of the Due Process Clause of the federal Constitution for failure to give adequate notice and an opportunity to be heard prior to the reduction in benefits. Plaintiffs also seek to enjoin the application of the rates calculated in accordance with Part 86–2 and to compel the promulgation of new rates which they assert are necessary to comply with the applicable state and federal statutes. Plaintiffs in both actions sought preliminary injunctive relief, on a class basis, to prohibit the implementation of Part 86–2 and to maintain the reimbursement levels in effect prior to the adoption of the new rates until the resolution of their claims on the merits.

In case No. 77–7102 the named plaintiffs, two medical facility associations and five residential health care facilities, seek to represent all nonprofit residential health care facilities in New York that provide services to medicaid sponsored patients. The thrust of plaintiffs' complaint, filed November 16, 1976, is that the new reimbursement rates are invalid under the governing federal statute, 42 U.S.C. § 1396a(a)(13)(E), in that they do not provide for a "reasonable cost related basis" in determining appropriate reimbursement. Plaintiffs also assert that the rates were promulgated in violation of various federal and state procedural requirements, including notice and hearing provisions, and a federal regulation (45 C.F.R. § 246.10(a)(3)) which provides that a medical care advisory committee have an opportunity to participate in the administration of the state's medicare program. After several hearings were held in December and January on the plaintiffs' motion for a preliminary injunction, the district court ruled from the bench on February 9, 1977, that because of the disparity in the effect of the new computation of reimbursement upon the individual members of the purported class of nursing homes, preliminary injunctive relief on a class basis was not appropriate. The court clearly stated that it was denying the requested relief only because of the class nature of the action and not with respect to the claims by individual homes. It offered separate members of the alleged class the opportunity to present evidence of the irreparable harm, suffered by an individual member, on a case-by-case basis.[2]

The nursing homes have appealed the district court's denial of preliminary injunctive relief on a class basis. The questions of whether this action is maintainable as a class action and whether the named plaintiffs are appropriate representatives of the purported class under Rule 23(c)(1) Fed.R. Civ.P. have not yet been ruled upon.

In No. 77–7114, an action commenced February 1, 1977, eight medicaid sponsored patients residing in nursing homes in New York, seek to represent the class of all medicaid sponsored patients in New York whose nursing care and benefits have been

---

1. As a result of upward adjustments in the rate schedules since the institution of these actions, a much smaller percentage of nursing homes is now receiving lower reimbursement rates than those in effect prior to November 1, 1976.

2. Through the New York Association of Homes for the Aging, the nursing home class members that are not nominal plaintiffs apparently have been kept fully informed of the proceedings in this action.

reduced as a result of the promulgation of the new medicaid reimbursement levels for residential health care facilities. Plaintiffs assert that the across-the-board adoption of new rates without granting the medicaid sponsored patients notice and a fair hearing, violates their right to procedural due process, the federal regulations guaranteeing notice and a hearing prior to the reduction of medicaid benefits, 45 C.F.R. §§ 205.-10(a)(4), (a)(5), (a)(6), and various state regulations governing the procedures to be followed.

At a hearing held on February 28, 1977 on plaintiffs' request for preliminary injunctive relief, the district court refused the relief sought on a class basis for the reasons stated from the bench in No. 77–7102 on February 9, 1977. The district court told the professed class representatives that medicaid patients at individual nursing homes could seek to prove that irreparable harm was caused them by the reductions in nursing care brought about by the lower reimbursement. Plaintiffs appeal from this ruling. The district court and this court have denied motions made by plaintiffs in both actions to stay the application of the new rates of reimbursement, pending resolution of this appeal.

Extensive hearings were held during December and January on the nursing homes' motion for a preliminary injunction in case No. 77–7102. The district court indicated concern over the manner in which the State had adopted the new reimbursement rates, but it never reached the issue of whether the claims of the individual nursing homes were sufficiently serious or meritorious to justify a preliminary injunction. The hearings concentrated upon plaintiffs' allegations that as a result of the new reimbursement rates the nursing homes, generally, were suffering irreparable harm and were having to cut back on essential services and that several facilities were on the verge of ceasing operations. During the course of the hearings in December, 1976, the State

announced that effective January 1, 1977, the reimbursement rates would be increased to offset inflation. The district court, therefore, delayed consideration of the necessity for preliminary injunctive relief for the period after January 1st, pending plaintiffs' analysis of the effect of the increase upon the financial conditions at the homes.

This left for the court's consideration whether the reimbursement rates in effect during November and December, 1976 should be preliminarily enjoined. On December 22, 1976, the court decided that before it could rule upon the issue of irreparable harm, the State should expedite the process of administrative appeals by the homes contesting their classification and the Health Department's recommendations concerning the curtailment in services.[3] Its reasoning was that if the homes could procure relief from the State through the administrative process, the court would not be placed in the position of adding to the State's fiscal woes by compelling the payment of higher rates pending a resolution of the case on the merits.

On February 4, 1977, plaintiffs renewed their motion for a preliminary injunction. The nursing homes asserted that the expedited state administrative proceedings had not resulted in significant relief and that the increase of January 1, 1977, designed to compensate for inflation, was insufficient to prevent the ongoing hardships suffered by a large portion of the homes in the class. On February 9th, plaintiffs presented witnesses from three nursing homes, who testified extensively as to the amount of the reduction on the reimbursement rate and its effect upon each individual home. Plaintiffs also attempted to show that the administrative appeals and the claimed offset for inflation did not alleviate their financial problems. At the conclusion of the hearing, the court denied the motion for a preliminary injunction on a class basis stating:

---

**3.** Through the administrative appeals the nursing homes were only able to contest the manner in which the Part 86–2 regulations were applied in their cases and the reasonableness of the State's recommended service reductions. They were not able to procure review of the regulations themselves or the manner in which they were promulgated.

"Then I will tell you right here and now that I will deny the motion for preliminary injunction on a class basis. I do so on the basis of the record that demonstrates to me that when the facts are gone into as to the individual homes, there is a wide and substantial discrepancy as to the issues as to each individual home.

\*   \*   \*   \*   \*   \*

The record amply demonstrates that there are differences in the rates granted to the homes. . . . There are differences with respect to the procedures engaged in by the Department of Health and the Department of the Budget with respect to these homes. There are differences, substantial differences, in the financial condition of the different homes. There are substantial differences in the effect of the various rates."

Although the district court offered to establish a procedure whereby those homes seriously affected could have the issue of irreparable harm and the appropriateness of preliminary injunctive relief adjudicated on a case-by-case basis, it is not apparent from the record which of the individual homes have followed that course.

In the action instituted on behalf of the patients, No. 77–7114, the record indicates that the district court initially denied preliminary injunctive relief on a class basis on February 18, 1977. On February 28th, the district court held a hearing to determine whether the State should be enjoined from applying the new rate to Beth Abraham Hospital. It was clear that the facility was operating at a loss but the State contended that cuts which it recommended could be made without any detriment to the patients. The plaintiffs disagreed and presented substantiating proof. At the conclusion of the hearing, the court directed the State to evaluate the reasonableness of the recommended cuts in light of the testimony that such decreases in care would adversely affect the health of the patients. If significant relief was not afforded through the administrative process, the court would resume hearings on the preliminary injunction motion in the case of the Abraham Hospital. Once again plaintiffs argued that preliminary injunctive relief was necessary for the *entire class* to avoid the irreparable harm caused by reduced nursing care. The court, however, reaffirmed its position that, for the reasons stated in the nursing home case, No. 77–7102, class based relief was not appropriate and would not be granted.

The parties to these appeals have assumed that the orders appealed from have in fact denied preliminary injunctions and, therefore, are appealable under 28 U.S.C. § 1292(a)(1), but they have reached this conclusion without giving any consideration to this court's jurisdiction to entertain the appeals.[4] In so doing they have failed to show that the attempted appeals do not violate the cardinal principle that "no unauthorized extension or reduction of jurisdiction, direct or indirect, occurs in the federal system," *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 253, 99 L.Ed. 233 (1955). Inasmuch as the orders appealed from do not "deny" injunctions within the meaning of 28 U.S.C. § 1292(a)(1)[5] and because there is no other statute providing appellate jurisdiction,[6] the

4. As Judge Timbers stated in dissent in *Diversified Mortgage Investors v. U. S. Life Insurance Co.,* 544 F.2d 571 (2d Cir. 1976):
    "It . . . is our duty independently to examine the jurisdictional underpinning of any case that comes before us, including our appellate jurisdiction, regardless of whether the issue is raised by counsel." *Id.* at 579.

5. 28 U.S.C. § 1292(a)(1) provides:
    "(a) the courts of appeals shall have jurisdiction of appeals from:
    (1) Interlocutory orders of the district courts of the United States . . . grant-

ing, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . ."

6. It is clear that the denial of class action status regarding the issue of irreparable harm on plaintiffs' motions for preliminary injunctions will not effectively terminate this litigation, and, therefore, the orders appealed from are not appealable final decisions under the death knell doctrine and this court has no jurisdiction under 28 U.S.C. § 1291. *See, Williams v. Wal-*

appeals are dismissed by this court without any consideration of the merits.

The district court never explicitly ruled upon the maintainability of either suit as a class action. Instead hearings were held on plaintiffs' motion to enjoin the State from putting the new reimbursement rates into effect *pendente lite*. Under the preliminary injunction test established in this Circuit in *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973), plaintiffs must show either:

> "(1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Id.* at 250.

Under either test, the movant must show a threat of irreparable harm, *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 n. 2 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976). The district court never passed upon the sufficiency of plaintiffs' actions on the merits, nor did it rule that individual nursing homes or patients therefrom had failed to establish irreparable harm. Rather, in deciding whether irreparable harm had been established, its ruling related solely to the inappropriateness of grouping a diverse class of nursing homes, which had been affected in different ways and ·to varying degrees by the new reimbursement rates. The district court has decided that it is appropriate to proceed on an individual case-by-case basis and has offered plaintiffs in both actions an opportunity to do so.

This court recently held in *Williams v. Wallace Silversmiths, Inc.* (2d Cir. March 4, 1977), slip op. 2181, that an order denying class action certification pursuant to Fed.R. Civ.P. 23(c) when the complaint included a request for class based injunctive relief was not an appealable interlocutory order under § 1292(a)(1). In *Williams*, plaintiffs brought a class action against their employer under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, charging the employer with discrimination in its employment policies on the basis of race. In addition to damages, plaintiffs sought a permanent injunction prohibiting the employer from discriminating in the future and also calling for an affirmative action program to remedy the consequences of past discrimination. They claimed to represent all persons who had been or would be discriminated against. The court held that the district court ruling denying class action status did not so contract the scope of ultimate injunctive relief as effectively to deny the remedy plaintiffs sought, *Id.* at 2188, and, therefore, was not appealable under § 1292(a)(1). *See also, Build of Buffalo, Inc. v. Sedita*, 441 F.2d 284, 287 (2d Cir. 1971).[7]

The district court's rulings in these cases have served only to determine that separate or individual claims of nursing homes or patients cannot be consolidated for trial as class actions. They have not limited the scope of the injunctive relief sought nor have they denied it. *National Machinery Co. v. Waterbury Farrel Foundry & Machine Co.*, 290 F.2d 527, 528 (2d Cir. 1961); see *Stewart-Warner Corp. v. Westinghouse*

---

lace *Silversmiths, Inc.* (2d Cir. March 4, 1977) slip op. 2181, 2184 n.2.

**7.** As in *Williams v. Wallace Silversmiths, Inc., supra,* the present cases are distinguishable from *Build of Buffalo, Inc. v. Sedita, supra,* in which the plaintiffs appealed the district court's dismissal of their civil rights claims as to three of many defendants. This court held that in granting the motion to dismiss as to the Mayor, Police Commissioner, and Department of Human Relations for the City of Buffalo, the district court had effectively denied plaintiffs' request for preliminary injunctive relief be-

cause enjoining only the remaining defendants, who were members of the police department, would not provide the broad relief from alleged systematic misbehavior in the operation of the police department. *Id.* at 286–87. In the present cases, plaintiffs are not similarly limited in the nature of the injunctive relief available to them. Each nursing home can still have the merits of its motion for a preliminary injunction tried before the district court with the prospect of securing on an individual basis the same relief sought on the original motions for preliminary injunctions.

*Electric Corp.,* 325 F.2d 822, 828–829 (2d Cir. 1963) (Friendly, *J.,* dissenting), *cert. denied,* 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964). The rulings do require that separate nursing homes and individuals must establish for themselves irreparable harm to qualify for preliminary injunctive relief. This is not to say that two or more claimants may not form an appropriate subclass pursuant to Fed.R.Civ.P. 23(c)(4).

Congress provided for interlocutory appeals from the orders specified in § 1292(a)(1) "to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger, supra,* 348 U.S. at 181, 75 S.Ct. at 252. Fed.R. Civ.P. 23(c)(4) permits the maintenance of a class action with respect to particular issues when "appropriate." The district court's order only established that class action status as to the preliminary injunction motion was not appropriate although maintenance of both suits as class actions with respect to the remaining issues might be entirely proper. Although the denial of class based preliminary injunctive relief delays the grant of such relief as a result of the necessary individual hearings, it does not, however, produce the type of irreparable consequences that were meant to be encompassed within the interlocutory orders appealable under § 1292(a)(1).

Furthermore, the district court's rulings were founded upon the factors established by Fed.R.Civ.P. 23 for the determination of the appropriateness of class based relief. As such, the orders only prescribe the nature and course that the hearings on plaintiffs' motions for preliminary injunctions will take in the district court and are not appealable under § 1292(a)(1). *See, Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); *Williams v. Mumford,* 167 U.S.App.D.C. 125, 511 F.2d 363, 370 (1975), *cert. denied,* 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975).

Appeals dismissed.